[No. 2048.]

## EX PARTE GUS CANTO.

1. CHARTER OF THE CITY OF BRYAN—MUNICIPAL REGULATION OF MARKET HOUSES.—Legislative enactments which authorize municipal authorities to regulate markets and market places are more liberally construed than those which invest the corporation with more unusual or extraordinary powers.   The charter of the city of Bryan, conferring upon the council the power "to regulate the erection, use and continuance of market houses," authorized the enactment of an ordinance prohibiting the sale of fresh beef, within market hours, at a place within the city of Bryan, other than the market house of said city.

2. SAME.—While the power of the city council to enact by-laws relative to public market houses, will not authorize the corporation to prohibit, entirely, the sale of meats within its limits, because such prohibition would be in restraint of trade, still the council has the power to enact a by-law forbidding the hawking about, or selling by retail, meats, etc., except at the public markets, and within certain limits about the same.

3. SAME—MONOPOLY.—The enactment of an ordinance exacting a reasonable amount as a license from persons occupying stalls and stands in the public market house, does not create a monopoly.   Thirty dollars per quarter for the occupation of a meat stall in the city market of Bryan is, under the evidence in this case, *held* to be a reasonable license fee.

4. SAME—EVIDENCE.—See the opinion for evidence *held* sufficient to establish the enactment of a city ordinance of which the record had been destroyed.

HABEAS CORPUS on appeal from an order in chambers, issued by the Hon. D. C. Barmore, County Judge of Brazos county, Texas.

The relator in this case was held under a warrant of arrest for the violation of an ordinance of the city of Bryan, Texas, entitled "An ordinance to establish and regulate a city market." The offense charged against him was the sale of fresh beef, dur-

ing market hours, within the corporate limits of the city of Bryan, Texas, at a place other than the market house of said city. He sought his discharge under the writ of habeas corpus, but the discharge being refused by the judge below, prosecutes this appeal.

The evidence embraced in the statement of facts covers about thirty pages in the transcript. Its effect is to establish that Bryan was first incorporated as a town, under the general law, by a vote of the people, on March 25, 1867; that it was incorporated as a city by a special act of the Legislature of Texas, on the twenty-ninth day of November, 1871, since which time it has been an incorporated city; that, at the time alleged in the affidavit against the relator, there was in existence an ordinance of the said city, of which the following are extracts:

"Section 1. The public market shall be the proper and only place for selling fresh meat of every description.

"Section 2. It shall be unlawful for any person to sell any fresh meat at any other place than the market house of the city of Bryan; provided, however, that any person may purchase fresh pork to make bacon and fresh beef to pickle.

"Section 3. The hours of four o'clock a. m. until nine o'clock a. m. shall be and are hereby declared market hours.

"Section 4. Any person violating the provisions of this ordinance shall, on conviction before the mayor, pay a fine of not less than five nor more than twenty-five dollars.

"Section 9. The term 'fresh meat' is intended to include any meat that has not been salted a sufficient length of time to be cured."

The evidence further established the lease by the city of Bryan of the ground floor of the Odd Fellows' hall, and its designation as the public market, and further, that, at the time alleged in the information, the relator was engaged in selling fresh beef at all hours of the day in another house than the said public market house.

The sections of the ordinance above set out were parts of the compilation of 1877, and is the evidence to which Judge Smith, as recited in the opinion, referred in his testimony.

*Garrett, Searcy & Bryan*, and *J. W. Doremus*, for the relator.

*J. H. Burts*, Assistant Attorney General, and *J. D. Thomas*, for the State.

HURT, JUDGE. Gus Canto was arrested upon the charge, regularly made, of selling fresh beef to one James Gilliard, within market hours, at a place in the city of Bryan, other than the market house of said city.

There was an ordinance of said city prohibiting such sales. Canto, believing this ordinance and prosecutions thereunder to be void, sued out the writ of habeas corpus. The writ was granted, and tried before the honorable county judge of Brazos county, the trial resulting in the applicant being remanded to custody, and from such order he appeals to this court.

The first proposition relied upon by counsel for the applicant is, that the city had no authority under its charter to pass such an ordinance. The charter grants authority "to regulate the erection, use and continuance of market houses." "In England the regulation of markets by by-laws has long been exercised, and such by-laws are sustained as being reasonable and conducive to the health and good government of the municipality. In this country, however, the practice is almost universal on the part of the Legislature, to confer upon the municipal agencies more or less authority with respect to markets and market places; and such grants are *not so strictly construed* as those which invest the corporation with powers of a more extraordinary and unusual character." (Dill. on Munic. Corp., sec. 380.)

Tested by the above principle, and, for the purpose of this argument, conceding that the *authority* must *be granted,* we are of the opinion that the charter of the city of Bryan confers such authority.

The second ground relied upon by appellant as a reason why said ordinance is void is, that said ordinance, under the facts of this case, creates a monopoly; and that, to force appellant to patronize the city market would have the effect to encourage and foster the monopoly. When this supposed offense was committed, the city was in control of the market house by lease from the owner, Mr. Lasker, and by ordinance each person occupying a stall must pay for the use to the city the sum of thirty dollars per quarter, and each person occupying a stand five dollars per quarter.

"The power to make by-laws relative to the public houses, etc., while it would not authorize a corporation entirely to prohibit the sale of meats, etc., within its limits, because this would be in general restraint of trade, will, nevertheless, authorize a by-law forbidding the hawking about or selling meats, etc., by

retail, except at the public markets, and within certain limits about the same." (1 Dill. on Munic. Corp., 386.) Nor will the exaction of a *reasonable* amount as a license from those occupying stalls and stands in the public market house create a monopoly. From the facts of this case, the price for the stalls and stands appear to us to be quite moderate and reasonable. (1 Dill. on Munic. Corp., 385–387.)

The third ground for holding that the ordinance was void, urged by the appellant is, "that there was no competent evidence of the passage of the same." It appears that the mayor's office, after the passage of the ordinance in question, had been destroyed by fire, and that said ordinance was then destroyed, but that the city had a printed compilation of the ordinance, which was made in 1877, and that Judge Smith, the city attorney, had carefully compared this with the originals in the minutes, and he swears that the compilation of 1877 was correct. Under the circumstances, this evidence was competent and sufficient to establish the ordinance in question. (1 Greenl. Ev., sec. 91.)

We have examined the material matters presented in the record, and are of opinion that there is no error in the record.

*Affirmed.*