CITY ·OF BELLAIRE, TEXAS, v. M.·A. LAMKIN ET UX.

No. A-6678. Decided October 29, 1958.
(317 S.W. 2d Series 43)

*Paul Strong,* of Houston, for petitioner.

*Charles H. Sherman, Jr.,* of Houston, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

The petitioner, City of Bellaire, Texas, hereinafter called City is a Home Rule city and under the authority of Articles 1011, 1011a, et seq., Vernon's Annotated Civil Statutes, it duly and legally passed a comprehensive zoning ordinance on April 19, 1950. As far as is material in our cause, this ordinance defined a front yard as "the open space between a building and the street on which it fronts." Further, the ordinance provided that "no fence, wall or anything similar shall be permitted in the front yard." Section 24, Subsection 7 of the said ordinance provides

that "no wall, fence, or other structure shall be erected and no hedge, shrub, tree or other growth shall be maintained on any corner lot within the required front and/or side street yard space so as to cause danger to traffic by obstructing the view."

Respondents, Mr. and Mrs. Lamkin, own a corner lot in the City. After the effective date of the zoning ordinance, the Lamkins erected a fence thirty inches high in their front yard with a gate approximately in the middle of the fence. This fence consists of 4 x 4 posts sunk in the ground to which posts are nailed three 1 x 6 railings, or strips, with the flat sides against the posts. The front yard fence was set back about 32 feet from the street on which the Lamkins' house faced, and some 40 feet from their house. The Lamkins did not apply to the City for a permit to erect the fence, and, of course, would have received no permit had they applied. After the postholes were dug, but before the posts were inserted therein, a representative of the City came to the Lamkins' home and inquired as to the purpose Lamkin had in digging the postholes. Upon being informed that the Lamkins proposed to erect the fence, this representative informed them they were prohibited from erecting the fence under the zoning ordinance of the City. He also told them the City would not permit the fence to be erected, or to continue in existence, if erected. The Lamkins went ahead and erected the fence claiming they had a constitutional right to do so. Various negotiations were had between the City and the Lamkins seeking to have the fence removed, but no progress was made. Finally, the City filed this suit against the Lamkins for a permanent injunction requiring them to remove the cyclone side fences and this front yard fence. Upon a trial before the Court without a jury, the injunction was denied as to the removal of the cyclone side fences, and granted as to the removal of the fence in the front yard.

The Lamkins appealed to the Court of Civil Appeals which court reversed the judgment of the trial court and rendered for the Lamkins on the ground that the ordinance, as applied to the Lamkins' fence, was unreasonable and that it had no reasonable relationship to public health, safety and general welfare. 308 S.W. 2d 70. We reverse the Court of Civil Appeals and affirm the judgment of the trial court.

■ The application for writ of error by the City was granted. There is no dispute that the City, in the exercise of its police power under statutory authority, including the Home Rule amendment to our Constitution, has authority to promulgate

zoning ordinances regulating the use, and, where necessary or appropriate, to prohibit the use of property for certain purposes in aid of the general welfare, safety and public health and morals of the community. Lombardo v. City of Dallas, 124 Texas 1, 73 S.W. 2d 475 (1934); City of San Antonio v. Pigeonhole Parking of Texas, 158 Texas 318, 311 S.W. 2d 218 (1958); Euclid v. Ambler Realty Co., 272 U.S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016. It is also the law that harmless structures, occupations, etc. may sometimes be brought within the regulations or prohibitions of an ordinance in order to abate or destroy the harmful. Lomardo v. City of Dallas, supra; Euclid v. Ambler Realty Co., supra.

■ The City, in passing zoning ordinances, acts in the exercise of its legislative powers, and its ordinance are presumed to be valid. City of Waxahachie v. Watkins, 154 Texas 206, 275 S.W. 2d 477 (1955); Town of Ascarate v. Villalobos, 148 Texas 254, 223 S.W. 2d 945 (1949). The courts have no authority to interfere with the City in the passage and enforcement of its zoning ordinances unless the action of the city is arbitrary and unreasonable. Town of Ascarate v. Villalobos, supra. The courts cannot interfere unless it appears that the ordinance represents a *clear abuse* of municipal discretion, and the "extraordinary" burden rests on one attacking the ordinance to show that no conclusive, or even controversial or issuable fact or condition existed which would authorize the governing board of the municipality to exercise the discretion confided to it in the passage of that part of the zoning ordinance under attack.

"This query presents a question of law, not a question of fact, and in deciding it the court should have due regard 'to all the circumstances of the city, the object sought to be attained and the necessity existing for the ordinance.' And if there is an issuable fact as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interest is not material. Edge v. City of Bellaire, Texas Civ. App., 200 S.W. 2d 224, 227, error refused." City of Waxahachie v. Watkins, 154 Texas 206, 207 S.W. 2d 477, 481, (1955).

See also King v. Guerra, Texas Civ. App., 1927, 1 S.W. 2d 373, wr. ref.; Town of Ascarate v. Villalobos, supra; City of Dallas v. Lively, Texas Civ. App., 1942, 161 S.W. 2d 895, and from City of Coleman v. Rhone, Texas Civ. App., 1949, 222 S.W. 2d 646, wr. ref., as follows:

"Courts are thus reluctant to disturb legislative action if the

subject matter involved lies within the police power and will not do so unless it clearly appears that the regulation is unnecessary and unreasonable and not justified by the facts. *If there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment or ordinance on a subject which lies within the police power, the courts will not hold it void.* 16. C.J.S., Constitutional Law, Sec. 198, page 569. * * * " (Emphasis added).

In our case the only evidence offered by the Lamkins aside from the description of their property and of the fence, was to the effect that they claimed the ordinance was invalid because, in their opinion, it violated their constitutional right of privacy, and their right to landscape their property the way they wanted to landscape it; and also that the fence would keep out (or keep in) dogs.

In their reply to the City's application for writ of error filed in this Court, the Lamkins, with commendable frankness, say: "The real question here being a matter of law to be determined, the Court is called upon to balance the rights of a municipality to attempt to promote, by zoning, the orderly growth of the community and to protect its collective citizenry as it may be opposed to be the individual citizen's inherent, necessary, valuable and constitutionally protected right in the ownership of property and the normal rights of usage therein, such as his rights of privacy and the rights to have and to exercise pride in the beautification of his home, property, and surroundings, as is clearly the situation relating to the Lamkins' fence in this case." With regard to the fence and its relation to the public health, safety, welfare and morals of the City of Bellaire, the following testimony was given. Here we have used the summary of the testimony contained in the City's application for writ of error, in order to reduce the length of this opinion. The Lamkins do not attack the correctness of the summary and we have read the statement of facts and it supports this summation.

"Bellaire's Chief of Police, O'Brien, who had been in police work since 1939, who has had 20-35 auto accidents investigated a month in that 18 years, a total of over 4,000, testified that Bellaire was a City of homes and children. There are 27 children in one block; having fences in front yards affects children, as it increases danger to them 100% when they run into the street. Chief O'Brien believed from looking at it that this hazard existed with reference to Respondents' property, and that similar fences would multiply the problems by the number of corners

in the City. The police have trouble with children in driveways; there is a stream of them in wagons, scooters, skates, bicycles going out into the streets. The chief also said that in his experience criminals hid behind fences in front yards. He pointed out that Bellaire had a population of 25,000 and covered 3½ square miles, of which only one quarter of a square mile was in the business district, and had no foot patrolmen, except in the business district. The City only has to do a small amount of night patrolling, because it is without fences in the front yard and the car can ride down the street and see any one in the front yards. A good illustration of this advantage may be gained by looking at the aerial photograph.

"L. X. Moody, Fire Captain, with 11 years of experience in the Bellaire Fire Department, covering 350 fire calls a year, a total of over 3800 in all, who had looked at appellants' property testified that the fences in the front yard around the house were very inconvenient for firemen because they had to drag hose over it and an additional fireman had to stay at the fence to lift the hose over since the couplings hang on the fence. Further, they have to throw their ladders over the fence, climb over and pick them up again. There is added difficulty in getting through the gate with equipment and firemen have to make several trips back and forth. Only one fireman could go through the Respondents' gate at a time. At night there is danger of firemen falling over the fence. The firemen had to put up a ladder to get over a fence at a school fire."

After hearing the evidence offered by both sides, the trial judge filed Findings of Fact and Conclusions of Law. The material portion of Finding No. 11 is set out in the opinion of the Court of Civil Appeals as follows:

"The elimination of fences from areas between a street and a parrallel line drawn through the fronts of houses facing such street, in districts zoned for single family residences, has a reasonable relationship to the public health, safety and general welfare in that elimination of such fences: 1) makes it easier for police patrol cars to see what is going on down the street; 2) makes it easier to police the area by depriving criminals of places of concealment in front yards; 3) makes it easier and quicker for fire fighting in the homes of residents, by eliminating the necessity of going through a gate or over a fence to bring ladders, hoses and men to fight fires; 4) makes it easier for drivers of vehicles using the street to see children and vehicles which might come or run into the street."

We agree with the trial court that the respondents did not produce evidence showing, as a matter of law, that the provisions of this zoning ordinance forbidding fences have no reasonable relationship to the public health, safety or general welfare, and such provisions were, therefore, within the discretionary power conferred upon the City Council of the City of Bellaire in the exercise of its legislative power.

We reserve the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Associate Justice Smith dissenting.

Opinion delivered, October 29, 1958.