C. S. SLATER, Appellant,

v.

CITY OF RIVER OAKS, Appellee.

No. 16049.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 18, 1959.

Rehearing Denied Jan. 15, 1960.

Tilley, Hyder & Law and Mark K. Singletary, Fort Worth, for appellant.

G. Gordon Whitman, Fort Worth, for appellee.

BOYD, Justice.

C. S. Slater filed suit against the City of River Oaks for a declaratory judgment that the City's zoning ordinances are invalid as applied to his property and for mandatory injunction directing the City

to issue a permit for the construction of a gasoline filling station on his lot. Trial was to the court, and from a judgment denying the relief prayed for, he appeals.

Appellant purchased the land in 1946. It is triangular in shape, and fronts 209.5 feet on River Oaks Boulevard, which is State Highway 183. There are now no permanent improvements on the lot; but at one time there was a cafe on it, and a trailer rental business is conducted on it now.

■ On December 2, 1947, the City Council enacted Ordinance No. 87, establishing a comprehensive zoning plan. Appellant's lot was given a residential classification. In 1950 it was given an "F" Commercial I District classification, which is its present status.

Ordinance No. 87 provided that granting or denying permits for the construction of gasoline filling stations in an "F" Commercial I District was discretionary with the Council. This was the situation until 1956, when Ordinance No. 242 was adopted, which amended Ordinance No. 87 and prohibited the construction of gasoline filling stations anywhere in the City. On March 25, 1958, Ordinance No. 265 was adopted, which further amended Ordinance No. 87 and provided that gasoline filling stations might be constructed only in a "G" Commercial II District. There are only four pieces of property in the City bearing a "G" Commercial II status, most of which property is on the Jacksboro Highway.

During the time that the construction of filling stations in an "F" Commercial I District was permissible only in the discretion of the Council, some fifteen applications were granted and as many or more were refused. In 1954 and again on March 4, 1958, appellant applied for a permit to construct a filling station on his lot. Both applications were denied. Appellant can sell his property for $26,500 if the construction of a filling station will be permitted. Land appraisers testified without

contradiction that for any other purpose the land would be worth not more than $13,600.

Most if not all of the buildings facing River Oaks Boulevard are business houses. Some seven are filling stations. One station is directly across the Boulevard from appellant's land. Another is near his property, and on the same side of the Boulevard. The cross streets, however, are faced by residence property.

River Oaks is a city of about 10,000 population. The corporate limits of the City of Fort Worth join it on three sides, and the City of Sansom Park joins it on the other. The business part of Fort Worth extends to the limits of River Oaks. The Mayor testified: "We are mostly a residential community. As I have just stated we have only one business street actually and we just feel that we would like to continue to be a residential section." He also said that one time, when the granting of permits to construct filling stations was discretionary with the Council, there were more than 300 signers to a protest against granting a permit to construct another station.

The question is not free from difficulty, but we think the Ordinances are not subject to the attack made upon them.

In this case we are dealing with a comprehensive zoning plan, unlike the situation in Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387; Continental Oil Co. v. City of Wichita Falls, Tex.Com. App., 42 S.W.2d 236, and City of Texarkana v. Mabry, Tex.Civ.App., 94 S.W.2d 871.

■ "It is well settled in this State as well as the other States of the Union, that the prohibition of certain industries or businesses in particular localities by means of a comprehensive zoning ordinance, carrying into effect a program of city planning, is a legitimate exercise of the police power." City of Corpus Christi v. Jones, Tex.Civ.

App., 144 S.W.2d 388, 397. Zoning ordinances are presumed to be valid. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477. Courts cannot interfere unless an ordinance represents a clear abuse of municipal discretion, and the burden is on one attacking an ordinance to show that no conclusive or issuable fact exists which would authorize the governing board of the municipality to enact it. City of Bellaire v. Lamkin, Tex., 317 S.W.2d 43, 66 A.L.R.2d 1289.

In Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 482, it is said: "Not only is a filling station a source of danger because the storage place of large quantities of explosives, but a filling station cannot be operated without customers, and there cannot be customers without increased traffic—the passing of cars from and into the streets. It is too plain to require argument that the location of filling stations may be controlled by the municipal authorities under a proper statute."

In City of Corpus Christi v. Jones, supra, after quoting with approval the following from Miller v. Board of Public Works, 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479: " 'the police power, as evidenced by comprehensive zoning ordinances, has a much wider scope than the mere suppression of the offensive uses of property * * *, and that it acts, not only negatively, but constructively and affirmatively, for the promotion of the public welfare,' " the court goes on to say: "As above pointed out, the record shows that the commercial district, as defined by the Zoning Ordinance, contains a number of non-conforming uses. The power to zone necessarily includes the power to plan for the future. It is a prospective power, and the City Council and Zoning Commission are not required to permit an offensive industry to operate in a particular district because of the fact that one such industry was operating there before the passage of the ordinance, and continues thereafter as a nonconforming use."

If a zoning ordinance is otherwise valid, it is not rendered invalid because it limits the use and depreciates the value of property. That a business located in a prohibited zone would be more profitable, or the property more valuable, than in another zone does not make the restrictive ordinance arbitrary and unreasonable. City of Corpus Christi v. Jones, supra; Lombardo v. City of Dallas, supra; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348.

In Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016, it was held that a city had power to divert industrial flow to an area with definitely fixed lines. In Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074, an ordinance was sustained which put property in Zone "B" wherein the construction of business buildings was thereafter prohibited, although, when the ordinance was adopted, there were a few real estate offices, a grocery store, a market, a fruit stand, and a two-story business block in the restricted zone. In Spencer-Sturla Co. v. City of Memphis, 155 Tenn. 70, 290 S.W. 608, it was said that provisions of an ordinance authorizing the continuance of the use of land in operation at the time of its adoption, which use does not conform to the provisions of the ordinance, do not create an unreasonable discrimination in favor of the nonconforming uses. An ordinance was sustained in American Wood Products Co. v. City of Minneapolis, D.C., 21 F.2d 440, which zoned property upon which there were manufactories as "multiple dwelling" districts, and prohibited the expansion of the existing manufactories and the erection of new ones.

In our opinion it was not shown that there are no issuable facts which would authorize the Council to adopt the ordinances complained of.

The judgment is affirmed.