**Derland J. FROST et vir, Appellants,**

**v.**

**VILLAGE OF HILSHIRE VILLAGE et al., Appellees.**

**No. 14675.**

Court of Civil Appeals of Texas.

Houston.

May 19, 1966.

Rehearing Denied June 9, 1966.

———◇———

Raymond M. Hill, Jimmy R. Cox, George J. Van Os, Mervin Key, Houston, for appellants.

Mauzy & Mauzy, D. B. Mauzy, Paul Strong, Carroll J. Boudreaux, Houston, for appellees.

WERLEIN, Justice.

Appellant, Derland J. Frost, joined by her husband, occupant-owners of a residence in the interior of the Village of Hilshire Village intervened in this suit originally brought by one Daisy Parks, for the purpose of attacking the validity of any zoning ordinances which the Village was then attempting to enforce with respect to approximately four acres of land fronting on Wirt Road on the east perimeter of the Village, owned by appellant, Derland J. Frost, as her separate property. The Village granted Daisy Parks certain relief and she dismissed her suit against appellee, Hilshire Village. The Village filed a cross-action against appellants seeking a permanent injunction restraining them from violating the terms of the 1964 amendment to the zoning ordinance adopted in 1956. Certain owners of lots in the interior of the Village intervened on the side of the Village seeking declaratory relief.

The case was tried to the court without a jury, and the court entered judgment decreeing that Ordinance No. 108 of the Village of Hilshire Village, Texas, enacted March 17, 1964, was valid and in full force and effect and applied to the property of the intervenor, Derland J. Frost, known as No. 1231 Wirt Road in said Village in Harris County, Texas. It was further decreed by the court that appellants be enjoined from in any manner using any of said property in any manner not authorized in single family dwelling District "B" under the provisions of said ordinance, except pursuant to a valid permit granted by the Board of Adjustment of said Village. In his judgment the court stated that the injunction was granted for the reasons that said property is subject to said residential restriction of said zoning ordinance, and the said Derland J. Frost had publicly notified the Village that she intended to use such property for commercial purposes. The court denied all relief prayed for by appellants.

Appellants assert that the court erred in finding Ordinance No. 108 to be valid and enforceable on the ground that such ordinance purports to amend a prior invalid ordinance, and further that the court erred in admitting into evidence purported copies of said prior zoning ordinance and amendments thereto in the absence of proper proof. The caption of the 1964 ordinance, sometimes referred to as Ordinance No. 108, refers to the 1956 ordinance and purports to be an amendment to such ordinance. Appellees contend that Zoning Ordinance No. 108 is valid not only because it is complete in itself but also because the 1956 ordinance, if originally invalid, has been validated by the State Legislature of Texas, and further because the original signed copies and map of said 1956 ordinance were properly proven and admitted into evidence.

■ We have carefully examined Ordinance No. 108 and have concluded that it is a valid enactment sufficiently complete in itself, insofar as concerns the issues involved in this case. It is a comprehensive zoning ordinance consisting of some 35 typewritten legal size pages with zoning map attached thereto. It establishes zoning districts, provides rules and regulations for such districts, and provides for a Board of Adjustment and for amendment, and conforms to the requirements of Articles 1011a to 1011j, Vernon's Annotated Texas Civil Statutes. It is our view that it would not be necessary to look to the 1956 ordinance unless the 1964 ordinance was declared invalid in some pertinent particular. The 1964 ordinance provides that the provisions of all ordinances previously adopted which are in conflict with the lawful provisions of the 1964 ordinance are repealed to the extent of such conflict only, and also that in the event any portion or portions of the 1964 ordinance are unconstitutional, then the corresponding portions of the zoning ordinance of 1956 shall continue to be effective. It defines non-conforming uses and allows certain deviations from the area lot requirements if they existed prior to the 1956 ordinance.

■ We are also of the opinion that the 1956 ordinance was sufficiently proven and properly admitted in evidence. Appellants' witness, R. B. Hyde, when presented with the minutes of March 22, 1956, testified in effect that he served on the zoning commission as chairman, and that he remembered that said ordinance was adopted by unanimous vote. The minutes of such meeting reflect that there was a public hearing on the proposed ordinance. The Village secretary testified that the minutes of the Village reflected the passage of the zoning ordinance on March 22, 1956. Robert Hitchcock, who had served as an alderman for three years and was mayor for three years, identified Defendants' Exhibit 116 as his copy of the zoning ordinance adopted March 22, 1956. He testified that several copies of the ordinance were signed and he identified the signatures of the mayor and aldermen on the copy of the zoning ordinance introduced in evidence and the signature on the zoning map, Defendants' Exhibit 117 attached thereto, as being that of Mayor English who served in 1956. He also identified the ordinance of September 6, 1957, Intervenors' Exhibit 10, as an amendment to the 1956 zoning ordinance, and testified that it was passed while he was mayor, that it had been posted as required by law and that there had been a public hearing upon it before it was adopted by the Council. T. H. Compere, who served as an alderman in 1957, testified that he was in charge of the original records of the City and turned them over to appellant, Collette E. Frost, when Mr. Frost was City Secretary, but he kept some copies and delivered Defendants' Exhibits 116 and 117 to the then Mayor Sharpe. Mr. Shepherd, who was an alderman in 1956, testified that he prepared the map for the 1956 zoning ordinance.

■ Since the original records could not be produced, the court properly admitted secondary evidence consisting of the copies of the 1956 ordinance and map which were shown by ample evidence to be true copies of the originals. Gulf, C. & S. F. Ry. Co. v. Calvert, 1895, 11 Tex.Civ.App. 297, 32 S.W. 246, writ denied; Ex Parte Canto, 1886, 21 Tex.App. 61, 17 S.W. 155. It was not essential to the validity of the 1956 zoning ordinance that it be recorded upon the minutes of the Village or placed in the office of the secretary of the Village. Southwestern Lloyds v. City of Wheeler, Tex. Com.App.1937, 130 Tex. 492, 109 S.W.2d 739; Heller v. City of Alvarado, 1892, 1 Tex.Civ.App. 409, 20 S.W. 1003; West Texas Construction Co. v. Doss, Tex.Civ. App.1932, 59 S.W.2d 866, aff'd Tex.Com. App., 96 S.W.2d 1116.

In Southwestern Lloyds v. City of Wheeler, supra, opinion adopted by the Supreme Court, the court said:

"We call attention to the fact that the Court of Civil Appeals was in error in

holding in effect that an ordinance was not effective until recorded in the minutes. Under our statutes, an ordinance of a city, such as is the City of Wheeler, need not be recorded in order to become effective. West Texas Construction Co. v. Doss (Tex.Civ. App.) 59 S.W.(2d) 866, affirmed (Tex. Com.App.) 96 S.W.(2d) 1116. This may be important in connection with the copies of ordinances found in the files of the city secretary."

■ Furthermore, the 1956 ordinance, if originally invalid for any reason, has been validated by certain Acts of the Texas Legislature. See Articles 974d-6, 974d-9, 966f and 966h, V.A.T.S. In Storm Bros. v. Town of Balcones Heights, 1951, 239 S.W. 2d 842, writ ref., n. r. e., the court said with respect to the contention that an ordinance was invalid because there was no compliance with Article 1011d as to the fifteen days' notice and also because it provided for a penalty and same was not published as required by Articles 1011d and 1013, V.A.T. S.: "After this case was pending on appeal the transcript having been filed in due time, there was enacted by the State Legislature a validating law."

The court then proceeded to quote certain provisions with respect to the validating law and stated that the validation cured the defects complained of, citing Morris v. City of Conroe, Tex.Civ.App., 47 S.W.2d 690, writ ref.; Cook v. City of Booker, Tex.Civ.App., 167 S.W.2d 232. See also Perkins v. State, Tex.Sup.1963, 367 S.W.2d 140, in which the court stated: "The Legislature clearly has the power to validate any defects in the incorporation of Impact, its boundaries and its governmental proceedings and acts."

■ Appellants strenuously urge that the zoning restriction on their property causes them oppressive loss and provides only conjectural benefit to the public as a whole and that it is founded in an improper exercise of the police power. They further contend that the zoning ordinance is arbitrary, capricious, unreasonable and discriminatory, in that it places upon their property an unreasonable restriction not a part of a uniform plan or scheme and in violation of the "due process" and "equal protection" provisions of the United States and Texas Constitutions. Appellants did not request, nor did the trial court make, any findings of fact and conclusions of law. Therefore, as held in North East Texas Motor Lines, Inc. v. Dickson et al., Sup.Ct.1949, 219 S.W. 2d 795, "We must, therefore, presume that the trial court resolved every disputed fact issue in favor of petitioner, the winning party and must consider only the evidence which supports its judgment, disregarding all evidence in conflict therewith." Notwithstanding this general rule of law, we have considered all of the evidence in passing upon appellants' assignments of error.

The evidence shows that prior to the adoption of Ordinance 108 in 1964, the interior lots in the Village were all restricted to residential use. In the northwest corner of the Village there is a business district facing on Westview Avenue. The lots along the east perimeter of the Village fronting on Wirt Road are for the most part quite large lots, approximately 450 feet in depth. The single residence lots in the interior of the Village facing west on Glowery Drive extend back to the rear boundary line of the large lots facing east on Wirt Road. Beginning at the top of the east perimeter of the Village at the corner of Wirt Road and Westview Avenue is the Lutheran Church. Just south of it is the Unitarian Fellowship Hall and Day School, and then the Cosby home where Mr. and Mrs. Cosby have lived for twelve years. Immediately south of the Cosby home is the Gay six acres which is vacant, and then south of the Gay six acres and adjacent thereto is the tract belonging to appellant, Derland Frost, and the Texaco Station. Abutting appellant's property on the south is the Methodist Church. Then, in order, going south, the Layton home, the Hammontree residence and office, the Browning rent

house, the Burkhart home and nursery, the Krenek home, the Mitschke lot, the Raub home and mill-work shop, and finally the Althaus home and two rent houses.

Prior to the adoption of Zoning Ordinance 108 in 1964 the property north of the Methodist Church in the east perimeter was zoned as residential property, and the property south of the Methodist Church was zoned as business property. Ordinance 108 restricts all of said perimeter property fronting on Wirt Road to residential use. Between Burkhart Nursery and the Krenek home there is a street known as Ridgeley which is the only entrance from Wirt Road into the interior of the Village. Just southeast of the Frost property and adjacent thereto is said Texaco Filling Station which was there prior to the adoption of the 1956 zoning ordinance. It fronts on Wirt Road and is between a portion of appellant's property and Wirt Road.

Most of the improved lots located in the east perimeter of the Village were actually being used as residences, although in case of a few of such lots some sort of business was transacted therein or therefrom, as in the case of the Cosby home where tropical fish were raised for sale. Appellant's property has been used as a residence and rented by appellant for residential use. Layton's property is used as a residence. Hammontree's property is used as a residence, as is also the Burkhart property. Browning's property is used as a residence but it consists of rental property. Krenek's tract is also used as a home, and so is the Raub tract. The Althaus tract is used for residential purposes.

At the time appellant, Derland J. Frost, purchased the property in question she knew of the zoning requirement of single family residences. Such property had never been used for anything else but a residence. Wirt Road is the eastern boundary of Hilshire Village, and the east side of Wirt Road is in the City of Houston and is primarily residential property from Westview south as far as the Methodist Church.

There are three churches in the east perimeter facing Wirt Road. In City of Sherman v. Simms, 1944, 143 Tex. 115, 183 S.W. 2d 415, it was held that churches are a permissible use in a residential addition. There is evidence showing that Hilshire Village is located in a wooded area, and that it is essentially a residential community, and also that the adjacent area across Wirt Road in Houston is predominantly residential in character.

Prior to the adoption of the zoning ordinance in 1956, appellant's property in part was restricted to residential use as shown by a dedication and restrictions deed in the chain of title to such property. There was evidence to the effect that the market value of appellant's property restricted to single family residences was $21,500.00. There was other evidence that such property, if subdivided into residential lots, would bring $56,000.00 without salesmen's commissions, and that property on Wirt Road unzoned and unrestricted might have a value of $1.00 per square foot. There was also evidence that appellant's property could be profitably divided into a residential subdivision. One John R. Phenix, an architect, testified that considering various factors in arriving at the best and proper zoning for appellant's property, it was more suited to residential development than commercial development, giving as one reason its depth and also its wooded character.

One Ellis Monk, who had had fifteen years' experience in the mortgage business, testified in effect that the residential lots at the rear of appellant's property would be depreciated 15% to 20% if backed up to commercial property, and would be depreciated 15% if apartments were constructed on appellant's property. The evidence shows that while there were some business uses made of some of the tracts fronting on Wirt Road lying south of the Methodist Church, such tracts were used for residences. The business uses made of such tracts were reasonably incidental to residential use so that there was merely a nominal or inconsequential breach of the

restriction to use such property as single family residences. It has been held that some businesses are permitted in a single family residential area if incidental to use as a residence.

In Hoyt v. Geist, Tex.Civ.App.1963, 364 S.W.2d 461, it was held that a business of an electrical contractor who had no other office and listed his address as his business address was incidental to residential use, and constituted only a nominal or inconsequential breach of the covenant to use the property as a single family residence. In City of Grand Prairie v. Finch, Tex.Civ. App.1956, 294 S.W.2d 851, it was held that "baby sitting" may be permitted in a "single family" residential zone as an incidental use. Moreover, the evidence reflects that there has been no substantial commercial development south of the Methodist Church during the time such property was zoned as commercial, and that during the nine years of commercial classification of that part of the perimeter property no commercial structure was erected.

With respect to the exercise of the police power by the Village in adopting the zoning ordinance, the evidence reflects that if apartments were constructed on appellant's property, the Village's police protection would be inadequate as there would be an increased requirement for security officers, and also that if the property was zoned commercial increased patrols would be required. It was also shown that zoning such property as commercial would raise problems of disposing of garbage. The Village has no public water supply, nor any sewage treatment plant. It has contracted with the City of Houston for water and disposal of sewage. There was also evidence to the effect that the Village police force consisted of unpaid volunteer deputies and that there was no policing during the day. The Chief Inspector for the Houston Fire Department testified that apartment houses of all descriptions pose a more severe life hazard than single dwellings.

The evidence also shows that except for the churches and the Texaco Service Station, the structures on the property on the west side of Wirt Road were residences in appearance and were capable of being used as such. One James Dunaway, a city planner, testified that appellant's property lends itself to single family residences and could be developed as a subdivision since values in that area are up and the area is wooded and desirable residential property. He further testified that it would not be unreasonable to zone the west side of Wirt Road as residential.

In considering all of the evidence and resolving every disputed fact issue in favor of appellees, we are unable to say that the refusal of the appellee, Village of Hilshire Village to change appellant's property facing on Wirt Road from a residential to a commercial zoning district, is unreasonable, arbitrary or confiscatory as a matter of law. The evidence shows that the house on appellant's tract had been rented by her and used as a residence and that the property was reasonably capable of being used for residences, and had a substantial value for residential use. Furthermore, the evidence shows that the lots in the rear of such property would be depreciated in value if appellant's tract was used for commercial purposes, and that the Village would be confronted with problems in connection with parking, traffic, water, sewage, fire hazards and police protection.

In City of Dallas v. Lively, Tex.Civ.App. 1942, 161 S.W.2d 895, writ ref., in which the jury found a lot was worth $500.00 if zoned residential and $12,500.00 if zoned for business, the court said:

"An attack upon any regulatory measure of a municipality is usually subject to the following well-settled rules: 'The legislative body may determine in the first instance whether or not facts or conditions exist warranting a classification; and its determination of that issue cannot be disturbed in the absence of a clear showing that there is no reasonable basis therefor.

The presumption is in favor of the validity of the ordinance. It will be presumed, in the absence of a clear showing to the contrary, that the governing body had sufficient reason, in view of local conditions, to make the classification which they have made; and if there could have existed a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. The burden of establishing its discriminatory character is upon a person attacking it on that ground; and any reasonable doubts as to the validity of the classification will be resolved in favor of its validity.' 30 T.J. p. 132, Sec. 61.

"Without exception, these familiar principles have been applied to zoning ordinances emanating from an authorized police power. Otherwise expressed, a clear abuse of municipal discretion must appear as a predicate for judicial interference. King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, writ refused * * *. To sustain charges that the municipal judgment is arbitrary and unreasonable in its effect upon his property (it is stated in King v. Guerra, supra [1 S.W.2d 376]), ' * * * the extraordinary burden rests upon appellee to show that no *conclusive,* or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused a permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury.' * * * * "

In City of El Paso v. Donohue, 1962, 163 Tex. 160, 352 S.W.2d 713, the court said:

"To uphold the position of the respondents in this case we must hold that there were no controversial or issuable facts or conditions existing which would authorize the City Council of El Paso to exercise a discretion in determining whether or not respondents' application for rezoning should be granted. We must say as a matter of law that the property in question is unsuitable for residential purposes and is in fact business property. This we cannot say when we consider all of the testimony in the record before us."

In City of Waxahachie v. Watkins, 1955, 154 Tex. 206, 275 S.W.2d 477, it was said: "And the 'extraordinary burden' rests on one attacking the ordinance 'to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it.'" To similar effect see City of Bellaire v. Lamkin, 1958, 159 Tex. 141, 317 S.W.2d 43, 66 A.L.R.2d 1289.

Appellants cite as favorable to their position City of West University Place v. Ellis, 1940, 134 Tex. 222, 134 S.W.2d 1038. We are of the opinion that the facts in the instant case in no way place appellants within the exceptional circumstances shown to exist in the Ellis case. Appellants also rely on Dowsey v. Village of Kensington, N.Y. Ct. of App.1931, 257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642. In that case it was contended by the village that apartment buildings on the Middle Neck Road frontage or, indeed, in any part of the village, might cause traffic congestion, fire hazards, and other dangers to the health and safety of the community. The court said: "In truth, the inference from the evidence is clear that these claims are without substance, and that the zoning ordinance has been framed for the purpose of excluding such buildings from the village in order to preserve it as a secluded quiet community of one-family detached homes."

Although the facts in the Kensington case are somewhat similar to those in the instant case, we cannot say as a matter of law, in view of all the evidence, that the claims asserted by appellees are without substance and "patently unreasonable" as was stated with respect to the claims of the Village in

the Kensington case. Furthermore, the 1964 ordinance has not imposed new restrictions on appellant's property nor changed its original zoning classification. It was originally zoned as residential in 1956 when the first zoning ordinance was adopted, and it has always been used as residential property and it is adapted to residential use. Under these circumstances the reasonableness of the zoning ordinance as applied to appellant's property is at least debatable thus invoking an exercise of discretion on the part of the Village.

It is our view that appellants have failed to sustain the extraordinary burden placed upon them to establish conclusively the existence of conditions making the refusal of the Village to change the zoning of appellant's property from residential to commercial arbitrary, capricious and unreasonable.

Judgment affirmed.