**T & R ASSOCIATES, INC. D/B/A Scarlett O'Hara's, Appellant,**

v.

**CITY OF AMARILLO, Appellee.**

No. 07–83–0217–CV.

Court of Appeals of Texas, Amarillo.

Jan. 21, 1985.

Rehearing Denied Feb. 11, 1985.

Judge & Russ, John Judge, Amarillo, for appellant.

Underwood Law Firm, C.A. Stein and Josiah M. Daniel, III, Merril E. Nunn, City Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant T & R Associates, Inc. d/b/a Scarlett O'Hara's (herein T & R) brings this appeal from a summary judgment that it take nothing on its counterclaim for money damages against appellee City of Amarillo (herein City). The action originated in the form of a counterclaim by T & R in a suit filed by the City seeking to enjoin the continued operation of a lounge known as Scarlett O'Hara's. In the counterclaim, T

& R sought damages to which it was assertedly entitled under both state law and 42 U.S.C. § 1983 (Supp.1984). T & R asserted the City, by seeking the injunction and by denying T & R's application for a specific use permit to continue operation of the lounge within a general retail district, in addition to violating state law, denied T & R "its due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States." On November 6, 1981, the trial court entered an interlocutory summary judgment that T & R take nothing on its counterclaim. On June 1, 1983, an order was entered severing the counterclaim from the other matters raised in the litigation. Hence, this appeal. We affirm the action of the trial court.

The record reveals that T & R is a Texas corporation which operated the lounge in question at Space 15–A in the Sunset Center mall in Amarillo. The original tenant of the space sold both prepared food and beverages. However, between that time and the date of acquisition of the premises by T & R, some of the interim tenants had dropped the food service portion. During that period of time, each of the tenants did have a liquor license from the State of Texas, although the nature of such licenses is not shown. On November 16, 1978, officials of the City notified T & R that its operation without food service was in violation of the City's zoning ordinance. Upon being so informed, T & R made application with the City for a specific use permit which would allow the continued operation of the lounge. Although the Planning and Zoning Commission recommended approval of the permit, after a public hearing, the City Commission denied the application.

In its first three points, T & R contends the refusal by the City of its specific use permit denied it due process of law. In the first point, it contends this was effectuated by the consideration by members of the Amarillo City Commission of "secret evidence" received outside the City's duly constituted hearing procedure. In its second and third points, T & R contends that this denial was accomplished by the failure of the City to follow what T & R denominates as guidelines set out in Amarillo, Tex., Code of Ordinances § 26–22.

■■■ In discussing these points, we initially note the litany of legal guidelines to be observed by this Court in the determination of summary judgment appeals. A summary judgment should be affirmed only if the summary judgment record establishes a right thereto as a matter of law, and the movant must establish that it is entitled to the judgment by reason of the matters set out in the motion. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Harrington v. Young Men's Christian Ass'n of Houston*, 452 S.W.2d 423, 424 (Tex.1970); *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). The burden of demonstrating the lack of a genuine issue of material fact is upon the movant and all doubts are resolved against him. *Womack v. Allstate Insurance Company*, 156 Tex. 467, 296 S.W.2d 233, 235 (1957); *Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845, 852 (Tex.App.—Amarillo 1983, writ dism'd); *Lindley v. Smith*, 524 S.W.2d 520, 523 (Tex.Civ.App.—Corpus Christi 1975, no writ).

■■■ Furthermore, we note that it is well established that regulation of the sale of alcoholic beverages through zoning ordinances is a proper exercise of a city's police powers. *Eckert v. Jacobs*, 142 S.W.2d 374, 376–77 (Tex.Civ.App.—Austin 1940, no writ). *See also Deckard v. City of Port Lavaca*, 491 S.W.2d 748, 751 (Tex.Civ.App. —Corpus Christi 1973, no writ). The rationale for this has been expressed as that the sale of intoxicants is accompanied with objections not present in other types of commercial enterprises, and that fact constitutes valid grounds for a separate classification or prohibition thereof in a given commercial area, for the protection of the health, morals, safety, peace and convenience of the public. *Eckert v. Jacobs*, 142 S.W.2d at 377.

■■■ The adoption and amendment of zoning ordinances is an exercise of the

legislative power of the City. *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477, 480 (1955); *Sherwood Lanes, Inc. v. City of San Angelo*, 511 S.W.2d 597, 599 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). The issuance of a specific use permit such as here sought would constitute an amendment of the zoning ordinance. *See City of Lubbock v. Whitacre*, 414 S.W.2d 497, 499 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). A city ordinance is presumed to be valid and this presumption applies to amendatory zoning ordinances as well as original comprehensive zoning ordinances. *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex.1971).

Therefore, a city council, acting in its legislative capacity may determine in the first instance whether or not facts exist warranting a classification and its determination of that issue cannot be disturbed in the absence of a clear showing that there is no reasonable basis therefor. It will be presumed, in the absence of a clear showing to the contrary, that in making that decision, the governing body had sufficient reason, in view of local conditions, to make the decision they have made. *City of Dallas v. Lively*, 161 S.W.2d 895, 898 (Tex.Civ. App.—Dallas 1942, writ ref'd). The burden of proof falls upon the party complaining of the decision to show that the decision amounted to a clear abuse of municipal discretion. *Hunt v. City of San Antonio*, 462 S.W.2d at 539. That burden has been described as "extra-ordinary" and requires a showing that no conclusive or even controversial or issuable facts exist which would justify the decision of the municipality. *Thompson v. City of Palestine*, 510 S.W.2d 579, 581 (Tex.1974); *City of Bellaire v. Lamkin*, 159 Tex. 141, 317 S.W.2d 43, 45 (1958); *City of Waxahachie v. Watkins*, 275 S.W.2d at 480. The decision as to whether the action of the municipality was an abuse of its discretion is a question of law for the court, and in deciding that question, the court must have due regard to all the circumstances of the city, the object sought to be attained and the necessity existing for the ordinance. *City of Bellaire v. Lamkin*, 317 S.W.2d at 45;

*Edge v. City of Bellaire*, 200 S.W.2d 224, 227 (Tex.Civ.App.—Galveston 1947, writ ref'd).

In support of its argument that "secret" evidence was received and considered by the City Commission in making its decision, T & R cites statements made in depositions by Mayor Jerry H. Hodge and Commissioner J. Dean Christy. In Hodge's case, that reference was to the fact that a previous owner of the property had told him that he had informed the owners of T & R that "they had a restaurant permit" and "if they removed that kitchen they would be in trouble." When queried as to whether that conversation was "a part of your decision making process," Hodge replied, "It certainly was, that and the fact that they had been in violation, and it's our responsibility as ... the ultimate responsibility of the City Commission to approve zoning, regardless whether it's in agreement with the Planning and Zoning Commission nor [sic] the city staff, and we have that responsibility and obligation."

In Christy's instance, the challenged statement was made in the course of a rambling answer concerning a comment Christy had made at the conclusion of the public hearing on the specific use permit. In that comment, he made reference to the fact that some innuendos and remarks had been made about the applicants that he did not appreciate. In his answer Christy said he was referring to the fact that name calling and innuendos weren't pertinent to the subject and "the crux of the matter, as I saw it, was strictly this, and the reason I' voted as I did, there was an establishment in operation in violation of city codes. That was a foregoing fact, that was clear cut." He then stated he thought "people" should have had "a right at the time that the zoning was changing to permit this establishment to either protest or not protest" and that they "had been denied that right." The remainder of the answer, and the challenged portion was as follows:

The one other thing that bothered me along these lines, is the fact that some

$35,000 worth of improvements were done without a permit. I was told, and now this is heresay [sic], that the reason no permit was gotten was that they knew that they could not get a permit for this type of remodeling due to the fact that a permit would not have been granted therefore, they went ahead with some $35,000 worth of remodeling without a city permit, in violation of another city ordinance. This is what I was told.

■■■■ We do not believe these references require reversal. While a public hearing is required by Tex.Rev.Civ.Stat. Ann. art. 1011d (Vernon 1963), that hearing is legislative rather than judicial in nature. *Lawton v. City of Austin*, 404 S.W.2d 648, 651 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.). It is not required that the decision of the City Commission be made solely on the basis of evidence produced at the hearing. After all of those who wish to be heard have been heard, the City Commission, like any other legislative body, had the right to act on its own knowledge of the community and its own appraisal of the public welfare. *Charlestown Homeowners Ass'n, Inc. v. LaCoke*, 507 S.W.2d 876, 879 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r. e.). The depositions in question show that this is exactly what Hodge and Christy did. Point of error one is overruled.

In points two and three, T & R asserts error on the part of the City in failing to follow guidelines which, it argues, are set out in the Amarillo, Tex., Code of Ordinances § 26–22 and thereby violated its constitutional right to due process of law. In pertinent part section 26–22 reads as follows:

Sec. 26–22. Specific use permits.

The city commission of the City of Amarillo, Texas, after public hearing and proper notice ... may authorize the issuance of specific use permits for the uses indicated by "S" in the use schedule section 26–8.

\*　　\*　　\*　　\*　　\*　　\*

(C) The city commission may, in the interest of public welfare and to assure compliance with the purposes of this ordinance, establish additional conditions of operation, location, arrangement and construction for any use for which a permit is authorized. In authorizing the location of any of the uses listed in section 26–8 as specific use permits, the city commission may impose additional development standards and safeguards as the conditions and locations indicate important to the welfare and protection of adjacent property from excessive noise, vibration, dust, dirt, smoke, fumes, gas, odor, explosion, glare, offensive view or other undesirable or hazardous conditions. In considering a specific use permit for any use in [a] "GR" ... zoning district, special consideration shall be given to possible undesirable characteristics of the use such as outside activities, storage of vehicles, equipment or materials, location and visual effects of loading areas and building type and appearance inconsistent with the zoning district.

■■■■ Examination of the ordinance readily reveals that the granting of a specific use permit by the City Commission is discretionary. In the event it desires to grant such a permit, the ordinance allows the City to establish any additional conditions, beyond those normally required by the zoning ordinance, for the operation, location, and construction of any use to be authorized by the permit. It is in this context, *i.e.*, the power to impose "additional development standards and safeguards" that the list of conditions which T & R characterizes as "guidelines" occur. The ordinance clearly does not specify guidelines under which a hearing on the application must be held nor does it specify any conditions or guidelines precedent to the denial of any such application. Therefore, we find nothing in the ordinance which would additionally restrict the City Commission in exercising its legislative discretion of either granting or denying an application for specific use permit. Points of error two and three are overruled.

In summary, we have considered all the elements required to be considered by us and we find no evidence of such arbitrary

or capricious conduct on the part of the City Commission as to constitute clear abuse of municipal discretion. It necessarily follows that we find that no violation of T & R's constitutional right to procedural due process occurred in the conduct of the hearing resulting in the denial of the permit sought. Points one, two and three are overruled.

Logical continuity next requires a discussion of points five and seven. In point five, T & R contends that the entry of the take-nothing judgment was error because the City was estopped to deny T & R's application for specific use permit. In point seven, T & R asserts the City ratified the lounge operation "by virtue of its prior certifications to the Texas Alcoholic Beverage Commission that the lounge operation was in compliance with the zoning ordinance." T & R groups and argues these points together and we will consider them together. The thrust of T & R's argument under these points is that the action of city inspectors in the issuance of certificates of occupancy during the period from September 6, 1973 to January 13, 1978, some or all of which were issued during a time when food service activities were not being conducted on the premises, either estops the City from now denying the legality of the lounge operation or, in the alternative, that such actions amounted to a ratification of the unauthorized use sufficient to legalize it.

T & R's version of the circumstances surrounding the issuance of these certificates is set out in a certified copy of a stipulation of evidence between the parties attached to the City's motion for summary judgment. That stipulation was filed with this Court in the previous appeal of a temporary injunction granted in this case. See *T & R Associates, Inc. v. City of Amarillo*, 601 S.W.2d 178 (Tex.Civ.App.—Amarillo 1980, no writ). In that instrument, referred to by both parties in their briefs, T & R sets out its understanding of the facts as testified by Earl Miskimen, Director of Code Enforcement for the City and Dale Williamson, who was Director of Planning and Traffic for the City. Since it is most

favorable to T & R's position in this appeal, we will accept it for the purpose of our discussion. It is as follows:

A) That in the ordinary course of business, in connection with each application for a Mixed Beverage Permit at Space 15–A, Sunset Center, there should have been and probably was an actual physical inspection at the premises by a duly authorized officer of THE CITY OF AMARILLO, Code Enforcement Department, and that neither witness could state as a fact that such inspection did not occur prior to the issuance of each document shown in Defendant's Exhibits 1–6;

B) That each such inspection, if any, resulted in the issuance of the documents shown as Defendant's Exhibits 1–6.

The defendant's exhibits referred to were the certificates in question. Defendant's exhibit 1 is dated January 13, 1978, exhibit 2 is dated June 6, 1977, and exhibit 4 is dated September 27, 1976. Each of these exhibits is a "Certificate of Code Compliance" and contains the following certification:

I hereby certify that the use described herein is designated by the Schedule of Uses, Section 26–8 of the Zoning Ordinance, as a permitted use in the Zoning District applicable to said location and that the building complies (or building plans comply) with the adequate building provisions of the Texas Liquor Control Act and the building and zoning codes of the City of Amarillo. This location is in a wet area.

Exhibit 3 is a "Tax and/or Code Enforcement Department Report Form" dated May 18, 1977. It refers to a "Late Hour and Mixed Beverage" license and is initialed "ok." Exhibit 5 is a "Certificate of Occupancy and Compliance" dated September 19, 1975. Both exhibit 5 and exhibit 6 state that the building or structure as defined therein "complies with the regulations of the Building Code, Health Ordinances, Zoning Ordinances and Other Ordinances of the City of Amarillo." It is the issuance of

these certificates, presumably after an inspection of the premises by a duly authorized officer of the City, upon which T & R relies in its argument under these points.

The City, citing *Hidalgo v. Surety Savings and Loan Association,* 462 S.W.2d 540, 543 (Tex.1971) and *City of Houston v. Clear Creek Basin,* 589 S.W.2d at 678 contends that T & R may not rely upon the issue presented by point five (estoppel) since it was not sufficiently presented to the trial court at the time of the summary judgment hearing. However, a review of T & R's response to the City's motion for summary judgment convinces us that the allegations in paragraphs IV, V, VI and VII were sufficient to preserve the question for decision.

█ The well-established general rule in Texas is that, as a matter of law, a city may not be estopped to enforce zoning ordinances unless the zoning violator has detrimentally relied upon an *authorized* act of the municipality. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex. 1970); *City of Amarillo v. Stapf,* 129 Tex. 81, 101 S.W.2d 229, 232 (1937); *City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 311-12 (1936); *Davis v. City of Abilene,* 250 S.W.2d 685, 688 (Tex.Civ.App.—Eastland 1952, writ ref'd); *Robinson v. City of Dallas,* 193 S.W.2d 821, 823 (Tex. Civ.App.—Austin 1946, writ ref'd). The exception to the general rule of non-estoppel on the part of the City, *i.e.,* detrimental reliance upon an authorized act of the municipality, is a narrow one. It has been stated that it should be applied only in exceptional cases and with caution. *City of Dallas v. Rosenthal,* 239 S.W.2d 636, 645–46 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.). Indeed, the *Rosenthal* case, and its predecessor case involving the same parties and the same fact situation, *Rosenthal v. City of Dallas,* 211 S.W.2d 279 (Tex.Civ.App.—Dallas 1948, writ ref'd n.r. e.), are the only instances in this State which we have found in which a court has found circumstances warranting the application of estoppel to a municipality in a zoning ordinance enforcement case.

In *Rosenthal,* the dispute arose out of Rosenthal's project of converting an old ice factory, located in an apartment district, into a cold storage plant. He submitted his plans to an assistant building inspector and an assistant city attorney. The assistant city attorney instructed the building inspector to determine whether a nonconforming use existed prior to the time of the enactment of the City's ordinance. If the ice factory was a valid nonconforming use, a cold storage use would also be possible under the ordinance. The inspector made a specific finding that the nonconforming use existed prior to the enactment of the ordinance. Based upon that finding, a permit was issued to Rosenthal for the operation of a cold storage plant including meat curing. A furor arose among the citizenry and the City of Dallas sought to revoke the permit.

In holding that the City was estopped to revoke the permit, the Dallas court stated that the action of the inspector had become "in a sense, res judicata." Because the City was estopped to deny the findings of the inspector of a prior nonconforming use, the court held the rights of the owners of such property to operate that business or a similar business had become vested. *Rosenthal v. City of Dallas,* 211 S.W.2d at 293. No such facts exist in the case *sub judice.*

█ The use of the premises by T & R without food service was admitted to be a clear violation of the zoning ordinance. Even assuming, arguendo, that the certificates were issued reflecting a lounge use, the inspectors had no authority to legalize such an unauthorized use. No fact finding by the inspectors of an authorized use of the premises is here involved. T & R was charged with notice of the provisions of the zoning ordinance and was not entitled to rely upon any action of the building inspectors which was in direct violation of such ordinance. If, in fact, it did rely upon any actions of the inspectors, T & R did so at its own peril and the City did not become bound or estopped thereby. *Davis v. City*

*of Abilene,* 250 S.W.2d at 688; *City of Amarillo v. Stapf,* 101 S.W.2d at 232.

 Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act which did not legally bind him and which he had the right to repudiate, but which, by the ratification, is given retroactive effect as if originally performed by him. *Kunkel v. Kunkel,* 515 S.W.2d 941, 948 (Tex.Civ.App. —Amarillo 1974, writ ref'd n.r.e.). Even assuming, arguendo that this doctrine, under proper facts, could be applied against the City, there are no facts in this record which would justify its application. The fact that a city official or employee fails in certain particulars to enforce a zoning regulation cannot render it invalid. *City of Corpus Christi v. Jones,* 144 S.W.2d 388, 392 (Tex.Civ.App.—San Antonio 1940, writ dism'd judgmt cor.). The application of the doctrine in this case would require T & R to admit that the purported acts of the inspectors not only did not bind the City but that it had a right to repudiate any such acts. T & R clearly has not done so and its argument as to ratification falls by its own weight. Moreover, there is nothing in this record which would raise a fact issue as to whether the members of the City Commission knew of the acts of the inspectors as to any attempted authorization of zoning violations, and so knowing, expressly ratified them. Points of error five and seven are overruled.

 In point six, T & R argues that the summary judgment proofs show the existence of a material fact question as to whether the zoning ordinance bears any rational relation to the protection of the public health, safety, morals, general welfare or any other legitimate governmental function insofar as it pertains to the lounge operation in question. T & R's argument under this point is that the City's "long, continued failure to enforce a zoning ordinance" has resulted in the "development of a defacto [sic] specific use permit" which renders the City's "belated attempt at enforcement" useless in promoting the public health, etc. of the City. Our discussion

under points five and seven, we believe, adequately covers this contention. For the reasons stated above, we do not believe the City itself is prevented from enforcing its ordinance. Moreover, even if this point were construed as representing an attack upon the validity of the ordinance itself, it comes too late. In all of its pleadings and in its response, T & R attacks the manner of enforcement of the ordinance, not the validity of the ordinance itself. Since that issue was not raised in the trial court by pleadings and written response to the motion for summary judgment, T & R may not raise that issue on appeal. *Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678; *Hidalgo v. Surety Savings and Loan Association,* 462 S.W.2d at 543; Tex. R.Civ.P. 166–A(c). Point of error six is overruled.

 The disposition which we have made of T & R's other points of error mandates the overruling of its fourth point. In that point, it asserts that the summary judgment proofs failed to establish as a matter of law that it should take nothing on its claim under 42 U.S.C. § 1983. A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984). The record sufficiently establishes that T & R has not been deprived of any such rights.

In summary, all of T & R's points of error are overruled and the judgment of the trial court affirmed.