NO. 07-08-0165-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 30, 2009
______________________________

VERIZON CORPORATE SERVICES CORP. F/D/B/A
VERIZON LOGISTICS, APPELLANT

V.

KAN-PAK SYSTEMS, INC., APPELLEE
_________________________________

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY;

NO. 96-223905-07; HONORABLE JEFF WALKER, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          Appellant, Verizon Corporate Services Corp., appeals the granting of summary
judgment in favor of appellee, Kan-Pak Systems, Inc. The judgment awarded Kan-Pak
actual damages in the amount of $97,464, attorney fees of $8,000, court costs, and post-judgment interest at the rate of 8.25 percent per annum. Verizon further contends that the
trial court erred in denying Verizon’s motion for summary judgment. We reverse and
remand.
Background
          In 1999, Verizon hired GLM to manage and oversee waste management at
Verizon’s Texas facilities. As part of the agreement by which Verizon hired GLM, Verizon
authorized GLM to review its current waste management and to negotiate leases with
vendors for waste management services. However, Verizon expressly denied GLM the
authority to enter into contracts on Verizon’s behalf. In addition, Verizon supplied GLM
with a letter of authorization to present to potential vendors that specified that GLM was
authorized to “act on behalf of Verizon to obtain information on waste removal and
recycling” and to “negotiate rates, service levels, and commodity rebates for the benefit of
Verizon.” However, this letter also expressly provided that, “GLM is not authorized to enter
into any agreement for service(s). Any negotiated rates, services levels, and commodity
rebates will be subject to review and final approval by [Verizon].”
          Between July 1999 and June 2002, a GLM employee negotiated and entered into
five rental contracts with Kan-Pak. According to these contracts, the GLM employee
entered into these contracts on behalf of Verizon. The five rental contracts were nearly
identical in their terms. Of particular relevance to the present appeal, each rental contract
was for a term of 60 months and contained an automatic renewal clause that would renew
the contracts for an additional 60 month period unless written notice of termination was
received by the other party no less than 60 days prior to the expiration of the current term.
          Kan-Pak supplied compactors to the five Verizon facilities covered under the
separate rental contracts. Either GLM or Verizon paid the monthly rental payments called
for under the rental contracts until September 2006. From September 2002 until
September 2006, Verizon received copies of all invoices covered by each of the five rental
contracts. In September 2004, Verizon contacted Kan-Pak about two of the locations
covered by the rental contracts requesting that half of the equipment be removed and that
the corresponding billing amount be decreased to reflect this change. Kan-Pak complied
with this request.
          In August 2006, Verizon informed Kan-Pak that it should submit its billing to Allied
Waste. Kan-Pak obliged and began to receive payments from Allied on four of the five
rental contracts.


 The reason for this change was that Verizon had terminated its waste
management consultation relationship with GLM and had retained Allied to perform this
task. As part of reviewing Verizon’s waste management, Allied discovered the rental
contracts that GLM had entered into with Kan-Pak. In December 2006, Allied forwarded
a copy of these rental contracts to Verizon. Verizon contends that the receipt of these
contracts in mid-December 2006 was when they became aware that such contracts existed
and was the first time that they saw the terms of the contracts. In February 2007, Verizon
contacted Kan-Pak by phone and advised Kan-Pak that Verizon had just discovered the
rental contracts and did not believe that it was bound by the contracts. Verizon asked Kan-Pak to remove the compactors from all five facilities. Initially, Kan-Pak agreed, but, the day
before it was to remove the compactors, Kan-Pak told Verizon that it was going to stand
by the terms of the rental contracts. In a letter dated April 25, 2007, Verizon notified Kan-Pak that it was to remove all equipment from the five sites covered by the rental contracts 
and that these rental contracts were terminated.
          As a result of receiving Verizon’s termination letter, Kan-Pak filed the present action. 
Kan-Pak’s petition alleges that Verizon breached the rental agreements because its
termination letter was received after each of the five rental agreements had automatically
renewed for new 60 month periods. After discovery, both parties moved for summary
judgment. In its motion, Kan-Pak contends that Verizon breached the rental contracts,
ratified the rental contracts, and is estopped from challenging the validity of the contracts. 
By its motion, Verizon contends that the rental contracts are unenforceable against it
because GLM lacked either actual or apparent authority to contract on behalf of Verizon, 
Verizon did not ratify the rental contracts, and Verizon is not estopped from challenging the
validity of the contracts. The trial court granted Kan-Pak’s summary judgment, denied
Verizon’s summary judgment, and awarded Kan-Pak $97,464, attorney fees of $8,000,
court costs, and post-judgment interest at the rate of 8.25 percent per annum. 
          Following entry of summary judgment, Verizon filed a motion for new trial
challenging the amount of the award of actual damages assessed by the trial court as well
as whether Kan-Pak had established ratification or estoppel as a matter of law. As it
relates to the amount of damages awarded, Verizon contends that the award was improper
as a matter of law because future payments under the rental contracts were not discounted
to present value. The trial court denied Verizon’s motion.
          On appeal, Verizon presents two issues. By its first issue, Verizon contends that
the trial court erred in granting summary judgment in favor of Kan-Pak and in failing to
grant summary judgment in favor of Verizon. By its second issue, Verizon contends that
the trial court erred in denying Verizon’s motion for new trial because Kan-Pak’s evidence
is legally insufficient to support the award of actual damages in the summary judgment.
Summary Judgment
          Verizon contends that the trial court erred in granting Kan-Pak’s motion for summary
judgment and in denying Verizon’s motion for summary judgment. Specifically, Verizon
contends that the evidence raised a genuine issue of material fact as to each of the
grounds upon which Kan-Pak sought summary judgment: ratification and equitable
estoppel. Furthermore, Verizon contends that it is entitled to summary judgment because
it established, as a matter of law, that the rental contracts were not binding on Verizon and,
therefore, there was no enforceable contract upon which Kan-Pak could assert its breach
of contract action.
          When both parties to a suit move for summary judgment, each party bears the
burden of establishing that it is entitled to judgment as a matter of law. City of Garland v.
Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one
party summary judgment and denies the other, we review both parties’ summary judgment
evidence, determine all questions presented, and render the judgment the trial judge
should have rendered. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000). When the trial court does not specify the basis on which it granted summary
judgment, the judgment will be affirmed on any meritorious ground expressly presented in
the motion and which is preserved for appellate review. State Farm Fire & Cas. Co. v.
S.S., 858 S.W.2d 374, 380 (Tex. 1993).
          Verizon moved for summary judgment on both traditional and no-evidence grounds,
while Kan-Pak’s motion asserted only traditional summary judgment grounds. See Tex.
R. Civ. P.166a. We review a summary judgment de novo to determine whether the movant
has established its right to summary judgment as a matter of law. See Dallas Cent.
Appraisal Dist. v. Cunningham, 161 S.W.3d 293, 295 (Tex.App.–Dallas 2005, no pet.). In
reviewing a summary judgment, we must examine the entire record in the light most
favorable to the nonmovant, indulging every reasonable inference and resolving any
doubts against the motion. See City of Keller v. Wilson, 168 S.W.3d 802, 824-25 (Tex.
2005). 
Enforceability of the Rental Contracts
          Verizon contends that it is entitled to summary judgment because it established, as
a matter of law, that GLM had no authority to enter into contracts on Verizon’s behalf and,
therefore, the rental contracts are not enforceable against Verizon.


 
          An agent cannot bind a principal unless the agent has actual or apparent authority
to do so. See Lifshutz v. Lifshutz, 199 S.W.3d 9, 22 (Tex.App.–San Antonio 2006, pet.
denied). Actual authority arises when the principal intentionally confers authority upon the
agent or intentionally or by want of ordinary care allows the agent to believe he has
authority. See id. Apparent authority exists when the principal’s acts would lead a
reasonably prudent person to believe that the agent had authority to act on behalf of the
principal, the principal has either affirmatively held out the agent as possessing authority
or knowingly and voluntarily permitted the agent to act in an unauthorized manner, and the
party relying on the agent’s apparent authority must have ascertained the fact and scope
of the agent’s authority. See Tex. Cityview Care Ctr., L.P. v. Fryer, 227 S.W.3d 345, 353
(Tex.App.–Fort Worth 2007, pet. dism’d by agr.). Only the actions of the principal can give
rise to apparent authority; actions or representations of the agent have no effect on the
determination. See id. Under either theory, the party alleging agency has the burden to
prove its existence. Id. at 352. 
          In the present case, there is no evidence in the record that would raise a fact issue
as to whether GLM had actual authority to contract on behalf of Verizon. The only
evidence relating to the actual authority that Verizon intentionally conferred on GLM is the
Waste Removal and Recycling Consultant Agreement between Verizon and GLM and a
letter of authorization that Verizon gave to GLM to present to potential vendors. Each of
these documents expressly provide that GLM was not authorized to enter into any
agreement or contract for services. Because this right was expressly denied GLM, we
cannot conclude that Verizon intentionally conferred authority to contract to GLM,
intentionally allowed GLM to believe that it had authority to contract on behalf of Verizon,
or that Verizon failed to exercise the degree of care necessary to prevent GLM from
believing that it had authority to contract on behalf of GLM. Thus, we agree with Verizon’s
summary judgment contention that it established, as a matter of law, that GLM did not have
actual authority to contract on Verizon’s behalf and, thus, Kan-Pak’s breach of contract
claims cannot be founded on the basis of GLM’s actual authority to enter into the rental
contracts on Verizon’s behalf.
          As to GLM’s apparent authority, we are constrained to review only the evidence of
the actions of Verizon in determining whether Kan-Pak could reasonably believe that GLM
had authority to enter into the rental contracts on behalf of Verizon. See id. at 353. The
evidence of Verizon’s actions as it relates to whether they would lead a reasonably prudent
person to believe that GLM was acting on Verizon’s behalf is the letter of authorization that
specifically defines the scope of GLM’s agency and expressly prohibits GLM from
contracting on Verizon’s behalf. There is no evidence that Verizon held GLM out as having
authority to contract on its behalf. Most significantly, however, is that there is no evidence
that Kan-Pak ascertained the fact and scope of GLM’s authority, which is a required
element of a claim of apparent authority. See id. Kan-Pak was notified, by the letter of
authorization, that GLM did not have authority to bind Verizon to a contract and, further,
there is no evidence that Kan-Pak took any action to ascertain that GLM had been granted
greater authority than what was expressly identified in the letter of authorization. Because
there is no evidence to support one or more elements of a claim that Verizon is bound by
the rental contracts because GLM had apparent authority to contract on behalf of Verizon,
Kan-Pak’s breach of contract claims may not rest on the apparent authority of GLM to
enter into the rental contracts on behalf of Verizon.
Ratification
          However, even though Verizon is not bound by the rental contracts based on the
actual or apparent authority of GLM to contract on Verizon’s behalf, Verizon would still be
bound by the contracts if it acted in a manner that ratified these contracts. In its motion for
summary judgment, Kan-Pak contends that Verizon ratified the rental contracts by directly
making 156 monthly payments under the rental contracts over the course of five to seven
years. Kan-Pak further cites evidence that GLM paid another 148 monthly payments. By
its summary judgment motion, Verizon contends that its actions were insufficient as a
matter of law to ratify the rental contracts and that it could not have ratified the rental
contracts before December 2006 because it was not aware of the material terms of the
contracts. Remaining mindful that this issue is presented in the context of competing
motions for summary judgment, we are required to examine the entire record in the light
most favorable to the nonmovant, indulging every reasonable inference and resolving any
doubts against the motion. See City of Keller, 168 S.W.3d at 824-25.
          Ratification of a contract occurs when a party recognizes the validity of the contract
by acting under the contract, performing under the contract, or affirmatively acknowledging
the contract. Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex.App.–Austin
1999, pet. denied). However, a party can only ratify a contract if, at the time of ratification,
it knew all of the material terms of the contract. See T & R Assocs., Inc. v. City of Amarillo,
688 S.W.2d 622, 630 (Tex.App.–Amarillo 1985, writ ref’d n.r.e.). Thus, if a party acts in
a manner that recognizes the validity of a contract with full knowledge of the material terms
of the contract, the party has ratified the contract and may not later withdraw its ratification
and seek to avoid the contract. See Spellman v. Am. Universal Inv. Co., 687 S.W.2d 27,
29-30 (Tex.App.–Corpus Christi 1984, writ ref’d n.r.e.). Any retention of the beneficial part
of the transaction affirms the contract and bars rescission as a matter of law. Id. at 30.
          Kan-Pak contends that Verizon’s direct payment of 156 monthly payments on three
of the five contracts over the course of five to seven years coupled with GLM’s payment
of 148 monthly payments on the remaining contracts is sufficient evidence to establish that
Verizon ratified the rental contracts as a matter of law. However, there is no direct
evidence that, prior to December 2006, Verizon had any knowledge of all of the material
terms of the rental contracts. Certainly, there is no direct evidence that Verizon made
those payments with knowledge that the terms of the rental contracts included a 60 month
term that would be automatically renewed for an additional 60 month term if not terminated
in writing within 60 days of the expiration of the initial 60 month term. For Verizon to have
ratified the rental contracts, it would have to be shown that Verizon had knowledge of the
material terms of the contract at the time that it performed under the contract. Because,
prior to December 2006, there is no direct evidence that Verizon knew the material terms
of the rental contracts that it was performing under, we cannot conclude that Verizon
ratified the rental contracts as a matter of law by paying the monthly rental payments.



          However, the evidence does establish that Verizon received copies of the rental
contracts in December 2006. Verizon made no direct monthly rental payments under the
rental contracts after it received copies of the rental contracts.


 Further, in February 2007,
Verizon contacted Kan-Pak and expressly repudiated the rental contracts.


 Looking at the
entire record and indulging all reasonable inferences in favor of Verizon, we conclude that
Verizon took no action after December of 2006 that ratified the rental contracts prior to its
express repudiation of those rental contracts in February 2007. Thus, Kan-Pak has failed
to establish that it was entitled to summary judgment on the basis that Verizon ratified the
rental contracts.
          Verizon contends, in support of its motion for summary judgment, that the evidence
establishes that it did not ratify the rental contracts as a matter of law. As discussed
above, Verizon received services and made monthly rental payments under the rental
contracts for five to seven years. Thus, Verizon retained some benefit under the rental
contracts and the retention of this benefit is some evidence of ratification. See Spellman,
687 S.W.2d at 30. Further, Verizon contends that GLM had no authority to contract on
Verizon’s behalf, yet Verizon acknowledges that it “knew that Kan-Pak had installed
compactors at its sites and what Kan-Pak was charging for each month’s rent.” We believe
that the presence of Kan-Pak’s compactors at five of Verizon’s Texas facilities and the
invoicing of monthly rental charges gives rise to a reasonable inference that a reasonably
prudent business would have investigated the basis of the monthly rental invoices and that,
in the exercise of ordinary diligence, such an investigation would have revealed the terms
of the rental contracts. While we cannot say that Verizon’s accepting of the benefits of the
rental contracts, without proof of its knowledge of the material terms of the rental contracts,
was a ratification of those contracts, we do conclude that Verizon’s conscious indifference
to discovering the terms of the rental contracts gives rise to a reasonable inference that it
knew or, at least, should have known the material terms of the rental contracts. As such,
we conclude that the evidence raises a genuine issue of material fact as to whether
Verizon ratified the rental contracts by making monthly rental payments under those
contracts. Therefore, we affirm the trial court’s denial of Verizon’s motion for summary
judgment.
Equitable Estoppel
          Finally, Kan-Pak contends that Verizon is equitably estopped from denying the
validity of the rental contracts based on its payment of the monthly rental charges. 
          A claim of equitable estoppel requires proof of five elements: (1) a false
representation or concealment of material facts, (2) done with actual or constructive
knowledge that the representation was false or that the concealed facts were material, (3)
made to a party without knowledge or the means to discover the facts, (4) with intent that
the other party act upon the representation or concealment, and (5) the other party
detrimentally relied on the representation or concealment. See Hausman v. Hausman, 199
S.W.3d 38, 43 (Tex.App.–San Antonio 2006, no pet.). 
          However, in the present case, Kan-Pak has presented no evidence that would
establish, as a matter of law, that Verizon made any knowing false representation or
intentionally concealed any material facts relating to the rental contracts. As discussed
above, it is possible that Verizon had knowledge of the terms of the rental contracts and
continued to receive the benefit of those rental contracts, which might rise to the level of
an intentional concealment of material fact, but the evidence does no more than raise an
inference of that fact and, therefore, is insufficient to support Kan-Pak’s motion for
summary judgment. Because Kan-Pak has failed to establish as a matter of law that
Verizon is equitably estopped from denying the validity of the rental contracts, the trial court
could not have granted summary judgment on that basis.
Conclusion
          Because genuine issues of material fact are raised by the evidence as to each of
the grounds upon which Kan-Pak moved for summary judgment and because the evidence
does not establish that Verizon did not ratify the rental contracts as a matter of law, we
reverse the trial court’s grant of summary judgment in favor of Kan-Pak and affirm the trial
court’s denial of Verizon’s motion for summary judgment.
Damages
          Finally, Verizon contends that the trial court erred in denying its motion for new trial
because the trial court’s award of actual damages was not discounted to present value. 
Because we have reversed the trial court’s summary judgment, the award of damages has
also been reversed. As such, the issue of the propriety of the trial court’s award of
damages is not before this Court. The “judicial power does not embrace the giving of
advisory opinions.” Gen. Land Office of Texas v. OXY U.S.A., Inc., 789 S.W.2d 569, 570
(Tex. 1990) (quoting Fireman’s Ins. Co. v. Burch, 442 S.W.2d 331, 333 (Tex. 1968)).
Conclusion
          For the foregoing reasons, we reverse the trial court’s grant of summary judgment
in favor of Kan-Pak, affirm the trial court’s denial of Verizon’s motion for summary
judgment, and remand the cause to the trial court.
 
                                                                           Mackey K. Hancock

                                                                                      Justice